UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN SOUTHERN DIVISION

ANDERSON LEE FERNANDERS

    Plaintiff,

V

JEFF WRIGHT
GENESEE COUNTY DRAIN COMMISSIONER,
DARNELL EARLE
FLINT'S STATE-APPOINTED
EMERGENCY MANAGER,
DAYNE WALLING
MAYOR OF THE CITY OF FLINT,

AND

MR. AND MS/MRS. JANE AND
JOHN DOE/UNKNOWN (1 TO 1000)
    Defendents.   /

Case No. 2:15-cv-10083
Hon. Avern Cohn
Mag. Steven R Whalen

FILED
JAN 23 2015
U.S. DISTRICT COURT
FLINT, MICHIGAN

## EX PARTE MOTION FOR RECONSIDERATION

    NOW COMES the Plaintiff, *in pro per, sui juris* ,and moves this Court to amend the attached Docket # 5 and 6 Dismissing Plaintiff's Complaint under 28 U.S.C. 1915 (e)(2) pursuant to Rule 7.1(g) of the Local Rules for the Eastern District of Michigan for the reasons contained in his accompanying Memorandum.

    WHEREFORE, Anderson Lee Fernanders prays that this Honorable Court make him whole by Amending Docket # 5 and 6 to Grant jurisdiction, Grant a stay of 60 day to serve as notice for any recovery relief in fines and sanctions as stipulated for 33 U.S.C. § 1365, 42 U.S.C. §300j-8 and Michigan Safe Water Act and Grant recovery of and all other relief sought in his Ex Parte Motion for a Temporary Restraining Order with Asset Freeze and Other Equitable without written or oral notice to Defendants and Mr. and Ms/Mrs. Jane and John Doe/Unknown (1 to 1000) and other relief that this Court finds as may be just and proper in the premises.

Respectfully

1-23-15

Anderson Lee Fernanders

Memorandum in Support

## I. STATEMENT OF FACTS

Plaintiff's Statement of Facts as written in his *ex parte* Complaint are hereby incorporated as if fully set forth herein as facts in this Memorandum in Support.

## II. STANDARD OF REVIEW

Rule 7.1(g) of the Local Rules for the Eastern District of Michigan provides that a motion for reconsideration shall be granted only if the movant can (1) "demonstrate a palpable defect by which the court and the parties have been misled" and (2) show that "correcting the defect will result in a different disposition of the case."[1] A motion for reconsideration which presents the same issues already ruled upon by the court, either expressly or by reasonable implication, will not be granted.[2]

"Although the Federal Rules of Civil Procedure do not provide for a motion for reconsideration, 'such motions, if served within 10 days of the entry of judgment, are considered motions to alter or amend judgments pursuant to Fed.R.Civ.P. 59(e)."[3] Such motions for reconsideration "are entrusted to the Court's sound discretion," and may generally be granted for three reasons: (1) an intervening change in the law; (2) evidence not previously available has become available; or (3) the necessity to correct a clear error of law or prevent manifest injustice.[4] Without otherwise restricting this court's discretion to grant reconsideration, the moving party must demonstrate a palpable defect by which the court and the parties have been

---

[1] E.D. Mich. LR 7.1(g)(3).
[2] Id.; Czajkowski v. Tindall & Associates, P.C., 967 F. Supp. 951, 952 (E.D. Mich. 1997).
[3] Nagle Industries, Inc. v. Ford Motor Co., 175 F.R.D. 251, 253 (E.D.Mich. May 21, 1997)(quoting Basinger v. CSX Transp., Inc., No. 94-3908, 1996 WL 400182, *2 (6th Cir.1996), cert. denied, 519 U.S. 1111, 117 S.Ct. 950, 136 L.Ed.2d 838 (1997) (citing Huff v. Metropolitan Life Ins. Co., 675 F.2d 119, 122 (6th Cir.1982)).
[4] Id. at 254 (quoting Keweenaw Bay Indian Community v. United States, 940 F.Supp. 1139, 1140 (W.D.Mich.1996)).

mislead, and show that correcting the defect will result in a different disposition of the case. E.D. Mich. LR 7.1(g)(3).

### III. ARGUMENT

### Introduction

In Docket 5, it reads that "plaintiff appears to allege that jurisdiction is based on a federal question, he refers simply to the Federal Safe Water Act. (p 3). When in fact his Complaint reads "This Court has jurisdiction over the subject matter of the action pursuant to 28 U.S.C. § 1331, by virtue of a federal question, Uniform Commercial Code (UCC) and Federal Safe Water Act, Michigan Safe Water Act." (p 3). Plaintiff will show the necessity to correct a clear error of law to prevent a manifest injustice which the court and the parties have been mislead in order to show that correcting the defect will result in a different disposition of the case.

### Plaintiff's Complait Prevents a Manifest Injustice

Indeed, the United States Supreme Court recently characterized the continuous supply of utilities as a necessity of modern life. One of the major drinking water issues in recent years has been the standards for chlorination of public drinking water supplies. (Susan W. Putnam & Jonathan Baert Wiener, Seeking Safe Drinking Water, in Risk Versus Risk: Tradeoffs In Protecting Health And The Environment supra note 104, at 124 (John D. Graham & Jonathan Baert Wiener eds., 1995) (noting the lack of public water treatment systems in developing countries and the fact that water-borne microbial diseases are responsible for millions of deaths each year)). Chlorination of drinking water supplies was one of the major public health advances of this century,' but in recent years there is some evidence that chlorine byproducts pose cancer risks.' Clearly in determining the threshold level for Trihalomethanes (THMs), maximum contaminant level ("MCL") was set at 80 parts per billion of THMs being present in drinking water

3

supplied by the City of Flint before someone could suffer from either acute, short term (after minimal of 90 days of exposure) or long-term (after a minimal 1 year and 3 months of exposure) adverse effects. MCLs are enforceable regulations establishing the maximum permissible level of a contaminant in water which is delivered to any user of a public water system. EPA issues these regulations, known as maximum contaminant levels, or MCLs,[5] for contaminants that are known to be present in drinking water, believed to have an adverse effect on human health, and for which there is a "meaningful opportunity for health risk reduction."[6] In other words, MCLs are "safe levels that are protective of public health."[7]

In setting an MCL, EPA begins with a maximum level contaminant goal ("MCLG").[8] This is the "maximum level of a contaminant in drinking water at which no known or anticipated adverse effect on the health of persons would occur, and which allows an adequate margin of safety."[9] In setting MCLGs, EPA relies on reference doses and cancer classifications for each contaminant under review, including consideration of sensitive groups, such as children.[10] EPA derives a reference dose from the no-observed-adverse-effect level ("NOAEL") or lowest-observed-adverse-effect level ("LOAEL") established by animal and human studies.[11]

Plaintiff elects to raise information and belief be heard in this matter that Defendants and Mr. and Ms/Mrs. Jane and John Doe/Unknown (1 to 1000) in a scheme for City of Flint residents and business along with their employees as well as the medical profession to buy, drink and otherwise using water contaminated with Trihalomethanes (THMs) above 80 parts per billion,

---

[5] 40 C.F.R. § 141.2 (2012).
[6] 42 U.S.C. § 300g-I(b)(1)(A).
[7] National Primary Drinking Water Regulations-Synthetic Organic Chemicals; Monitoring for Unregulated Contaminants; Final Rule, 52 Fed. Reg. 25,690, 25,694 (July 8, 1987); see also National Oil and Hazardous Substances Pollution Contingency Plan; Final Rule, 55 Fed. Reg. 8666, 8750 (Mar. 8, 1990) (codified at 40 C.F.R. pt. 300) ("MCLs represent the level of water quality that EPA believes is acceptable for over 200 million Americans to consume every day from public drinking water supplies.").
[8] 42 U.S.C. § 300g-I(b)(I)(A).
[9] 40 C.F.R. § 141.2. MCLGs are a starting point in the MCL process; they are not enforceable standards on their own. Id.
[10] National Primary Drinking Water Regulations, 56 Fed. Reg. 3526, 3531-32 (Jan. 30, 1991) (codified at 40 C.F.R. pts. 141-43).
[11] Id. at 3,532.

supplied by the City of Flint past violations of Uniform Commercial Code (UCC), Federal Safe Water Act, Michigan Safe Water Act, State of Michigan Constitution and these United States Federal Constitution this Court establish the requisite reasonable likelihood of future violations in view of the totality of the circumstances, since these violation started at Trihalomethanes (THMs) above 80 parts per billion and have continued to Trihalomethanes (THMs) levels reaching 99 parts per billion. Second, Defendants and Mr. and Ms/Mrs. Jane and John Doe/Unknown (1 to 1000) knowingly, recklessly, wantonly, and/or negligently poisoned the Plaintiff and all City of Flint residents and employees by causing City of Flint residents and business along with their employees as well as the medical profession who unknowingly and unwittingly to buy, drink and otherwise using water contaminated with Trihalomethanes (THMs) above 80 parts per billion, failed to rectify this problem, which it could and should have resolved, attempted to cover up the problem by issuing inadequate and misleading information, did not warn Plaintiff and all City of Flint residents and employees by causing City of Flint residents and business along with their employees as well as the medical profession the true nature and extent of the danger to those exposed to the water supplied by the City of Flint. Finally, Defendants and Mr. and Ms/Mrs. Jane and John Doe/Unknown (1 to 1000) continued governance and or connection has continued the Scheme were Plaintiff and all City of Flint residents and employees by causing City of Flint residents and business along with their employees as well as the medical profession who unknowingly and unwittingly to buy, drink and otherwise using water contaminated with Trihalomethanes (THMs) above 80 parts per billion.

      Their scheme for City of Flint residents and business along with their employees as well as the medical profession to continue to buy, drink and otherwise use water contaminated with Trihalomethanes (THMs) above 80 parts per billion, supplied by the City of Flint. Defendants

and Mr. and Ms/Mrs. Jane and John Doe/Unknown (1 to 1000) in this scheme to earn money directly or indirectly derived from water contaminated with Trihalomethanes (THMs) above 80 parts per billion which is continued being supplied by the City of Flint. See other predicate acts which were enacted during the conspiracy in the Plaintiff's ex parte Complaint.

**Plaintiff's Complaint's Uniform Commercial Code (UCC) Jurisdiction**

Plaintiff stated in his Complaint that "[t]his Court has jurisdiction over the subject matter of the action pursuant to 28 U.S.C. § 1331, by virtue of a federal question, Uniform Commercial Code (UCC) and Federal Safe Water Act, Michigan Safe Water Act." (p 3). A clear error of law to prevent a manifest injustice occurred by not awarding jurisdiction to Plaintiffs Complaint is brought under Uniform Commercial Code (UCC or "the Code") given it was included as a federal question. The Court correcting this defect will result in a different disposition of the case because If the Code is applied to utility supply contracts, either literally or analogously, its provisions for express and implied warranties of quality will extend to utility consumers. An express warranty can be created by the seller's description of, or affirmation of fact about, goods which become part of the basis of the bargain.[12] Thus, a seller's advertisement[13] describing gas as "odorized" or water as "pure" would create an express warranty that the goods conform to the description. Although express warranties are possible in the utility setting, implied warranties of merchantability and fitness for a particular purpose will likely be encountered more frequently. A warranty that goods sold are "merchantable" is implied in every sale of goods by a merchant.[14] The practical significance of strict tort liability doctrines is that recovery of damages under each

---

[12] U.C.C. § 2-313. An express warranty can also be created by the seller's display of a sample or model which is made part of the basis of bargain.
[13] Express warranties can be created by statements made in advertisements. See, e.g., Filler v. Rayex Corp., 435 F.2d 336 (7th Cir. 1970).
[14] U.C.C. 5 2-314.

6

is not contingent upon proof of negligence.[15] As gas, electricity and water are considered "goods" under the Code, they are also likely to be considered "products" within section 402A of the *Restatement (Second) of Torts*.[16] under section 402A is so similar in content to the implied warranty of merchantability that several courts consider them almost co-extensive.[17] A utility company is clearly in the business of selling to consumers its particular product-gas, electricity or water-and this product enters the stream of commerce when it passes through the customer's meter.[18] Thus, implied warranty and strict tort liability doctrines apply to the direct sale to a consumer of a defective utility product, such as drinking water intermingled with flammable as,[19]

---

[15] Tinnerholm v. Parke Davis & Co., 285 F. Supp. 432, 440 (S.D.N.Y. 1968); Piercefield v. Remington Arms Co., 375 Mich. 85, 96, 133 N.W.2d 129, 134 (1965); Kopet v. Klein, 275 Minn. 525, 529, 148 N.W.2d 385, 389 (1967); Hollinger v. Shoppers Paradise of N.J., Inc. 134 N.J. Super. 328, 336, 340 A.2d 687, 692 (1975); United Pacific Ins. Co. v. Balcrank, Inc., 175 Ohio St. 267, 271, 193 N.E.2d 920, 923 (1963); Marathon Battery Co. v. Kilpatrick, 418 P.2d 900, 911 (Okla. 1965). See Prosser, The Fall of the Citadel (Strict Liability to the Consumer), 50 MINN. L. REv. 791, 802 (1966); Shanker, supra note 83, at 559-61.

[16] RESTATEMENT (SEcoND) OF TORTS § 402A (1965) provides:
(1) One who sells any product in a defective condition unreasonably dangerous to the user or
consumer or to his property is subject to liability for physical harm thereby caused to the ultimate
user or consumer, or to his property, if (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

[17] Westric Battery Co. v. Standard Elec. Co., 482 F.2d 1307, 1315 (10th Cir. 1973); Greeno v. Clark Equip. Co., 237 F. Supp. 427, 429 (N.D. Ind. 1965); Realmuto v. Straub Motors, Inc., 65 N.J. 336, 343, 322 A.2d 440, 443 (1974). See also WHITE & SUMMERS, supra note 23, 5 9-8 at 295 (while § 402A requires product to be "unreasonably dangerous" in addition to being defective and does not apply to purely economic injury, 5 402A standard is nearly synonymous with U.C.C. standard of merchantability); Dickerson, The ABC's of Products Liability- With a Close Look at Section 402A and the Code, 36 TENN. L. REv. 439, 442-44 (1969) (5 402A and Code approaches substantively the same, although § 402A is free of limitations such as privity, disclaimer and notice); Shanker, A Reexamination of Prosser's Products Liability Crossword Game: The Strict or Stricter Liability of Commercial Code Sales Warranty, 29 CASE W. Ras. L. REv. 550 (1979) (no substantial differences exist between the two systems).
84 See, e.g., Tinnerholm v. Parke Davis & Co., 285 F. Supp. 432, 440 (S.D.N.Y. 1968); Piercefield v. Remington Arms Co., 375 Mich. 85, 96, 133 N.W.2d 129, 134 (1965); Kopet v. Klein, 275 Minn. 525, 529, 148 N.W.2d 385, 389 (1967); Hollinger v. Shoppers Paradise of N.J., Inc. 134 N.J. Super. 328, 336, 340 A.2d 687, 692 (1975); United Pacific Ins. Co. v. Balcrank, Inc., 175 Ohio St. 267, 271, 193 N.E.2d 920, 923 (1963); Marathon Battery Co. v. Kilpatrick, 418 P.2d 900, 911 (Okla. 1965). See Prosser, The Fall of the Citadel (Strict Liability to the Consumer), 50 MINN. L. REv. 791, 802 (1966); Shanker, supra note 83, at 559-61.

[18] Id.; Williams v. Detroit Edison Co., 63 Mich. App. 559, 568, 234 N.W.2d 702, 707 (1975), appeal denied, 395 Mich. 800 (1975). See also Note, supra note 8, at 791.

[19] Moody v. City of Galveston, 524 S.W.2d 583 (Tex. Civ. App. 1975) (§ 402A applied to drinking water intermixed with flammable gas).

excessive voltage passing into a residence through the customer's meter, [20] or gas containing liquid hydrocarbons.[21]

Plaintiff's and all other residents of the City of Flint who unknowingly and unwittingly drink, shower in, bathe in, and otherwise domestic uses for water injuries result directly from Defendants and Mr. and Ms/Mrs. Jane and John Doe/Unknown (1 to 1000) knowingly, recklessly, wantonly, and/or negligently supplying us with a water source contaminated with dangerous toxins known as Trihalomethanes (THMs) above 80 parts per billion water, given this fact the "unfit for ordinary purposes" or "deviation from the norm" tests could be readily applied. The meaning of defect in utility product cases depends upon the type of accident involved. If an injury results directly from gas, electricity or water supplied to a customer, the "unfit for ordinary purposes" or "deviation from the norm" tests could be readily applied. For example, if an electric company allows excess voltage to pass through a customer's meter[22], causing a fire,[23] the electric charge would not differ scientifically from other electricity. As supplied, however, the electricity would be unfit for the buyer's particular purpose and for the ordinary purpose of residential use. Similarly, electricity of insufficient voltage that burns out a machine, gas supplied under improper pressure or mixed with an untoward element,[24] or contaminated water[25] would be "defective" under these tests.

Product liability doctrines are easily applied to cases in which a defective utility product is supplied to a customer's meter, since those cases involve the release of a dangerous product, in its finished state, into the stream of commerce. It is arguable that product liability doctrines

---

[20] Ransome v. Wisconsin Elec. Power Co., 87 Wis. 2d 605 275 N.W.2d 641 (1979) (§ 402A applied when excessive voltage passed through customer's meter and destroyed house).
[21] Murphy v. Petrolane-Wyoming Gas Serv., 468 P.2d 969 (Wyo. 1970) (U.C.C. warranties applied where fire caused by liquid hydrocarbons in gas lines).
[22] Ransome v. Wisconsin Elec. Power Co., 275 N.W.2d 641 (Wis. 1979).
[23] Murphy v. Petrolane-Wyoming Gas Serv., 468 P.2d 969 (Wyo. 1970).
[24] Murphy v. Petrolane-Wyoming Gas Serv., 468 P.2d 969 (Wyo. 1970).
[25] Moody v. City of Galveston, 524 S.W.2d 583 (Tex. Civ. App. 1975).

8

should also extend to injuries caused by a utility company's defective distribution equipment.[26] Such an extension would require that distribution equipment be considered part of the product sold by the utility company-so that defective equipment would give rise to liability even where the gas, electricity, or water itself is not defective. The extension of these doctrines would further the objectives-compensating the injured, providing incentives for increased product safety, and allocating the costs of the injury to the party best able to bear them.[27]

Section 2-105 of the Code defines "goods" to include "all things ... which are movable at the time of identification to the contract for sale .... "[28] In utility supply contracts identification occurs, at the very latest, when the utility product is drawn through the customer's meter.[29] Utility contracts therefore involve the sale of goods, and the Code is the governing body of law. Gas, water and electricity are tangible and corporeal personal property, as opposed to intangible property such as choses in action.[30] While various definitions of merchantability are suggested by the Code,[31] the term is generally taken to mean that goods are fit for their ordinary purposes.[32] Once made, this warranty guarantees that the goods will be fit for the buyer's

---

[26] Comment, supra note 91, at 811-15.
[27] For a discussion of policy goals of products liability doctrines, see Dickerson, supra note 83, at 440. See also Comment, supra note 91, at 816-18.
[28] U.C.C. § 2-105(1).
[29] "Identification" means the identification of the particular existing goods to which the contract refers. In the absence of express agreement, identification occurs when the contract is made, if it is for the sale of goods already existing and identified. If the sale is for future goods, identification occurs when the goods are shipped, marked or otherwise designated by the seller as goods to which the contract refers. U.C.C. 5 2-501(1)(a), (b). A comment to this section states that "[i]t is possible for identification to be tentative or contingent . . . the general policy is to resolve all doubts in favor of identification." U.C.C. § 2-501, Official Comment 1.
[30] Comment 7 U. RICH. L. REV. 405, 407 (1972).
[31] U.C.C. 5 2-314(2) provides: (2) Goods to be merchantable must be at least such as (a) pass without objection in the trade under the contract description; and (b) in the case of fungible goods, are of fair average quality within the description; and (c) are fit for the ordinary purposes for which such goods are used; and (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and (e) are adequately contained, packaged, and labeled as the agreement may require; and (f) conform to the promises or affirmations of fact made on the container or label if any.
[32] Huebert v. Federal Pacific Elec. Co., 208 Kan. 720, 494 P.2d 1210 (1972). See also WHITE & SUMMERS, supra note 23, § 9-7 at 293.

particular purpose, regardless of the ordinary purposes for which such goods are used.[33] Warranties of quality and strict tort liability can thus be described as result-oriented rather than process-oriented;[34] they look to the quality of the product received by the consumer rather than to whether the seller's wrongdoing caused the injury.[35] Many courts subject sellers to liability without proof of negligence, even in the absence of a technical sale, when the seller places defective goods in the "stream of commerce."[36]

**Plaintiff's Complaint's Federal Safe Water Act Jurisdiction**

The purpose of the notice requirement of the citizen suit provision is to inform federal and state agencies of claimed violations, thereby providing them with opportunity to take their own enforcement and remedial action[37] and give the violator an opportunity to bring itself into complete compliance and thus render unnecessary a citizen suit.[38] In this present case, Plaintiff elects to raise information and belief be heard in this matter that Defendants and Mr. and Ms/Mrs. Jane and John Doe/Unknown (1 to 1000), along with federal and state agencies are fully aware of the TTHM's MCL violation and have had done taken any action to come in compliance by bringing the TTHM's at or under the MCL thus rendering unnecessary a Plaintiff's suit. The use of MCLs, even if they fall short of "aspirational goals,"[39] is perfectly compatible with defining an injury under existing tort law. In Jones v. Mt. Holly Water Co., the court held that "[a]ctual notice or knowledge of the wholesomeness of the water of the defendant company was not an essential element . . .

---

[33] ., Bosway Tube & Steel Corp. v. McKay Mach. Co., 65 Mich. App. 426, 237 N.W.2d 488 (1975). See also WHITE & SUMMERS, supra note 23, § 9-9 at 297

[34] MacDougall v. Ford Motor Co., 214 Pa. Super. 384, 391, 257 A.2d 676, 680 (1969). See also Singal, supra note 4, at 870.

[35] Shanker, supra note 83, at 561: The words "strict liability" are nothing more than a shorthand way of indicating what professional sellers knew long before Professor Prosser, strict tort, and Restatement Section 402A appeared on the scene: namely, they are liable for breach of the merchantability (or any other) warranty, even though that breach was not due to their negligence or other fault.

[36] First Nati. Bank v. Cessna Aircraft Co., 365 So. 2d 966 (Ala. 1978); Fulbright v. Klamath Gas Co., 271 Or. 449, 533 P.2d 316 (1975). See generally Comment, Strict Products Liabilityfor Injuries Prior to Sale or Delivery: A Proposed "Stream of Commerce" Test, 17 DuQ. L. REv. 799 (1979).

[37] *Mancuso v. New York State Thruway Authority*, 909 F. Supp. 133 (1995).

[38] *Laidlaw*, 528 U.S. 167, 175 (2000).

[39] National Primary Drinking Water Regulations; Final Rule, 56 Fed. Reg. 3526, 3534 (Jan. 30, 1991).

. [i]t was sufficient . . . that the defendant, in the exercise of reasonable care, might have discovered the unwholesomeness and dangerous condition of the water."[40] With the fact "that the location reporting the highest TTHM level was 99 ug/L"[41] This notice requirement places an undue burden of additional heath risk on Plaintiff and all the residents of the City of flint. For argument sake let's say that on January 9th 2015 Plaintiff sent out a notice to defendant; since TRO Exhibit 4 was signed January 2nd 2015, and stated that "We are currently working on solutions to correct the problem. We anticipate resolving the problem in 2015." Plaintiff and all the residents of the City of flint suffer from either acute adverse effects. This Court nor Plaintiff absent of discover know when TTHM level first went above 80 ug/L, there for at the on the 61st day when Plaintiff can file a Complaint short term (after minimal of 90 days of exposure) or long-term (after a minimal 1 year and 3 months of exposure) acute adverse effects. " With the fact that TRO Exhibit 4 stated that the water supplied to Plaintiff and other City of Flint residents contain aTTHM level was 99 ug/L, in combination some courts will rather treat the complaint as notice and hold the suit for 60 days to see what enforcement action is taken.[42] If the EPA or the state do not act within the 60 days, the court will allow the suit to go forward. Plaintiff prays this Honorable court will Grant a stay of 60 day to serve as notice for any recovery relief in fines and sanctions as stipulated for 33 U.S.C. § 1365, 42 U.S.C. §300j-8 and Michigan Safe Water Act

**Conclusion**

The harm suffered by Plaintiffs and all City of Flint residents and business along with their employees not being remedied have been forced to go without domestic water supplied by the City of Flint which does not exceeded the TTHM's MCL neglectfully impacts our well-being and that of our families continues prolonged duress. Therefore, an order protecting Plaintiffs and all City of Flint residents and business along with their employees, as well as, along with City of

---

[40] 107. 93 A. 860, 861 (N.J. 1915) (emphasis added).
[41] TRO Exhibit 4, p 1.
[42] National Sea Clammers Association v. City of New York, 616 F.2d 1222 (3d Cir. 1980).

Flint business and medical professionals from Defendants and Mr. and Ms/Mrs. Jane and John Doe/Unknown (1 to 1000) actions and lack of action illuminated in the statements of fact is clearly in the public interest. Under UCC, 33 U.S.C. § 1365, 42 U.S.C. §300j-8, Michigan Safe Water Act, and Constitutional Tort[43] this Court has ample authority to permit the Anderson Lee Fernanders to be made whole.

**Relief**

WHEREFORE, Anderson Lee Fernanders prays that this Honorable Court make him whole by Amending Docket # 5 and 6 to Grant jurisdiction, Grant a stay of 60 day to serve as notice for any recovery relief in fines and sanctions as stipulated for 33 U.S.C. § 1365, 42 U.S.C. §300j-8 and Michigan Safe Water Act and Grant recovery of and all other relief sought in his Ex Parte Motion for a Temporary Restraining Order with Asset Freeze and Other Equitable without written or oral notice to Defendants and Mr. and Ms/Mrs. Jane and John Doe/Unknown (1 to 1000) and other relief that this Court finds as may be just and proper in the premises.

Respectfully

1-23-15

Anderson Lee Fernanders/Date
5801 Marlowe Drive
Flint, MI 48504
(216) 272-3539

PROOF OF SERVICE

I hereby certify that I mailed a copy of this Ex Parte Motion for Reconsideration by prepaid U.S. First Class Mail, to the following persons on 23 of January 2015: Jeff Wright, 4610 Beecher Road Flint, MI 48532; Darnell Earle, 1101 S. Saginaw St. Flint, MI 48502; and Dayne Walling, 1101 South Saginaw Street # 101 Flint, MI 48502.

1-23-15

Anderson Lee Fernanders/Date

---

[43] Bradley v. Am. Smelting & Refining Co., 635 F. Supp. At 1157-58. (W.D. Wash. 1986) (adopting rule of Borland v. Sanders Lead Co., 369 So.2d 523, 529 (Ala. 1979) ); see also Rhodes v. E.I. Du Pont de Nemours & Co., 636 F.3d 88, 96 (4th Cir. 2011) (under West Virginia law plaintiffs must show that contamination "damaged or interfered with the plaintiffs' possession and use of their property").

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDERSON LEE FERNANDERS,

    Plaintiff,

v.

JEFF WRIGHT, GENESEE COUNTY
DRAIN COMMISSIONER, DARNEL EARLE,
FLINT'S STATE-APPOINTED EMERGENCY
MANAGER, DAYNE WALLING, MAYOR OF
THE CITY OF FLINT,

and

MR. and MS./MRS. JANE AND JOHN DOE/
UNKNOWN (1-100)

    Defendants.
_____/

Case No. 15-10083

HON. AVERN COHN

## ORDER
## GRANTING PLAINTIFF'S APPLICATION TO PROCEED IN FORMA PAUPERIS
## AND DISMISSING COMPLAINT

I.

Plaintiff Anderson Lee Fernanders, proceeding pro se, has filed an "Ex Parte Complaint for Preliminary Injunction and Other Relief" naming "Jeff Wright, Genesee County, Drain Commissioner, Darnel Earle, Flint's State-appointed Emergency Manager, Dayne Walling, Mayor of The City of Flint, and Mr. and Ms./Mrs. Jane and John Doe/ Unknown (1-100)" as defendants.

Plaintiff seeks to proceed in forma pauperis. Based upon the information in the Application to Proceed In Forma Pauperis, the Court, under 28 U.S.C. § 1915, GRANTS plaintiff in forma pauperis (IFP) status. For the reasons that follow, however, the

complaint will be dismissed for lack of subject-matter jurisdiction.

II.

Under 28 U.S.C. § 1915 (e)(2)(B) a Court may dismiss a complaint at any time if it determines that the case is frivolous or malicious, that the plaintiff fails to state a claim upon which relief may be granted, or seeks relief against a defendant who is immune from such relief. This section "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Id. at 327. In order to determine whether dismissal under § 1915(e)(2)(B) is appropriate, it must be determined whether the plaintiff's complaint "makes an arguable legal claim and whether it is based on rational facts." Lawler v. Marshall 898 F.2d 1196, 1198 (6th Cir. 1990). A complaint "is frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Factual frivolousness includes allegations that are "clearly baseless," "fantastic", or "delusional." Id. at 327-28.

Moreover, a federal court is always "under an independent obligation to examine their own jurisdiction," FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990), and a federal court may not entertain an action over which it has no jurisdiction. See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 701 (1982). Indeed, a court is required to dismiss an action at any time if it lacks subject-matter jurisdiction. See Fed. R. Civ. P. 12(h)(3); See Wagenknecht v. United States, 533 F.3d 412, 416 (6th Cir. 2008) ("a district court may sua sponte dismiss an action when it lacks subject matter jurisdiction.").

2

The Court must read pro se complaints indulgently, see Haines v. Kerner, 404 U.S. 519, 520 (1972), and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. Denton v. Hernandez, 504 U.S. 25, 33 (1992). Moreover, under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 677-79 (2009). Thus, "[p]ro se plaintiffs are not automatically entitled to take every case to trial." Price v. Caruso, 451 F. Supp. 2d 889, 893 (E.D. Mich. 2006) (quoting Pilgrim v. Littlefield, 92 F.3d 413, 416 (6th Cir.1996)).

III.

The Court has reviewed the complaint as well as the documents attached to the complaint. From what can be gleaned, plaintiff alleges that defendants "poisoned" plaintiff and all other residents of th City of Flint residents by providing water contaminated with toxins known as "Trihalomethanes." The complaint asserts six (6) counts, phrased by plaintiff as follows:

> Count One - Negligence
> Count Two - Breach of Duty to Statutory Standard of Care (Negligence Per Se)
> Count Three - Breach of Express and Implied Good Faith and Fiduciary
> Count Four - Civil Conspiracy
> Count Five - Constitutional Tort
> Count Six - Preliminary Injunction

Plaintiff seeks injunctive relief[1] and damages.

The Court cannot discern a plausible basis for jurisdiction. While plaintiff appears to allege that jurisdiction is based on a federal question, he refers simply to the

---

[1] Plaintiff has separately filed an "Ex Parte Motion for a Temporary Restraining Order with Asset Freeze and Other Equitable Relief."

3

"Federal Safe Water Act." This is insufficient.[2] Rather, it appears that plaintiff's claims are brought under state law. Claims under state law against state individuals or entities must be brought in state court, not federal court.

IV.

For the reasons stated above, the complaint is DISMISSED under 28 U.S.C. § 1915(e)(2) because it fails to set forth the basis for subject matter jurisdiction. The Court also certifies that any appeal from this decision could not be taken in good faith. See 28 U.S.C. § 1915(a)(3).

SO ORDERED.

        S/Avern Cohn
        AVERN COHN
        UNITED STATES DISTRICT JUDGE

Dated: January 20, 2015

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, January 20, 2015, by electronic and/or ordinary mail.

        S/Sakne Chami
        Case Manager, (313) 234-5160

---

[2] While plaintiff did not cite a discrete federal statute, it is plausible that plaintiff is seeking to file a claim under the Clean Water Act ("CWA"), 33 U.S.C. § 1365, and/or the Safe Drinking Water Act ("SDWA"), 42 U.S.C. § 300j-8. However, even assuming plaintiff was pursuing relief under either act, the Court lacks subject matter jurisdiction over such a claim. First, there are no allegations that plaintiff provided the defendants with adequate notice of the alleged statutory violations. See 40 C.F.R. § 135.3 (notice under CWA must provide sufficient information to permit recipient to identify violation, including activity, persons responsible, location and dates); id. § 135.12 (notice requirement identical under SDWA). Moreover, an individual must provide notice to the EPA prior to instituting a lawsuit under the CWA or SDWA. See 33 U.S.C. § 1365(b)(1)(A) and 42 U.S.C. § 300j–8(b)(1)(B). The complaint does not contain any allegations that plaintiff complied with this requirement.

4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDERSON LEE FERNANDERS,

    Plaintiff,

v.

Case No. 15-10083

HONORABLE AVERN COHN

JEFF WRIGHT, GENESEE COUNTY
DRAIN COMMISSIONER, DARNEL
EARLE, FLINT'S STATE-APPOINTED
EMERGENCY MANAGER, DAYNE
WALLING, MAYOR OF
THE CITY OF FLINT,

and

MR. and MS./MRS. JANE AND JOHN
DOE/
UNKNOWN (1-100),

    Defendant.
_____/

## JUDGMENT

In accordance with the order of dismissal entered on January 20, 2015, it is hereby adjudged and decreed that the foregoing action is DISMISSED.

DAVID WEAVER

Dated: January 20, 2015

By: s/ Sakne Chami
    Deputy Clerk

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, January 20, 2015, by electronic and/or ordinary mail.

s/Sakne Chami
Case Manager, (313) 234-5160